All right, we are now in session. Thank you all for coming. Good morning, please be seated. Madam Clerk, what would you call the first case? 6P, 2600. John Lang LaSalle Midwest, LLC v. Lanzatech, Inc. Please state your name for the record. Good morning, Your Honors. I am Katie Poole on behalf of the appellant, Lanzatech. Good morning, Your Honor. I am Don Tarkinson on behalf of the appellees and cross-appellants, J.L.L. Midwest and appellee J.L.L. America. Very well. We have two cases on the docket this morning and we want to be faithful to the time. We are aware that there is a cross appeal and the cross appeal involves only a single issue, correct? Correct. So we would anticipate allowing for the 15 minutes for your argument. Would you wish to reserve some time for rebuttal? I would, Your Honor, if I could reserve five minutes for rebuttal. That's fine. And then once we conclude with the appellant's appeal, we'll proceed with the cross appeal. How much time would you anticipate that you would need for your single issue? Three minutes. That would work just well. So we'll proceed then. If you're ready, counsel.  We are, Your Honor. May it please the Court. The essence of this case involves three questions that the jury either answered or did not answer as part of its verdict. Those are questions 8, 9, and 10. At question 8, the jury was asked, did JLL present evidence by which you can determine the fair and reasonable value of its damages? And the jury answered that question, no. Now, had the jury answered question 8, yes, it would have gone to question 9. And at question 9, there's a blank space. And in that blank space, the jury would have awarded what it thought was the value of any contract damages that JLL sustained as a result of Lanzatek's breach. But the jury left that space blank, and it went to question 10. And at question 10, the jury is asked, did JLL sustain damages but failed to present any evidence by which you can determine the fair and reasonable value of those damages? And the jury answered that question, yes. Now, the last part of question 10 is, in essence, a restatement of Illinois law, namely that even though a plaintiff may sustain damages, if the plaintiff fails to prove the actual value of those damages, then it's only entitled to nominal damages, that is, a trivial amount. Where did the jury get the number from? $205,000 or whatever? Their hypothesis is that that number came from a passing statement by the landlord's broker, CBRE, that mentioned that had it been the joint broker for Lanzatek, then it would have been paid not $410,000, but $205,000. So a hypothesis came from the testimony of a witness. It's not like the jury just dreamed up a number, right? That's where it's mentioned there, but I want to be quick to point out, that number has nothing to do with JLL's damages, because JLL never proposed that. Lanzatek never proposed that as a damages issue. Neither side proposed this as damages. It was a passing mention, and it has nothing to do with a damages question. So in some ways, the jury picked this number after it had been found. There was no evidence of fair and reasonable damages. The question wasn't about whether there was no evidence. There was a question whether or not Lanzatek presented the evidence.  And the jury could say, well, I didn't get it from Lanzatek's witnesses, but I got it from somebody else. Therefore, there's some confusion, and that confusion was never clarified. Well, Your Honor, I think it's clear. JLL never presented it. We never presented it as damages. They heard that as a comment. It was evidence. They heard it in testimony, though, didn't they? They heard it in testimony, but it was not testimony having anything to do with damages. That's why that hypothetical really doesn't work as some kind of a way to justify what the jury did here. It was a passing comment, and if it had been proposed as either side's damages or some, but a jury, after it has already determined that there's no evidence of fair and reasonable damages, then it's at a point then that it really can't do anything other than, as a matter of law, award nominal damages. Now, they may think, well, we didn't like JLL's number. We didn't like Lanzatek's number. They just, at that point, at that point, after they've made that finding, as a matter of law, they can only award nominal damages. That's the question. What was the nature of those four questions? Those four questions. You admit in your brief, I think you acknowledge in your brief, that they are not special interrogators. What is the nature of those? Well, the colloquy, the back and forth on pages 51 and 55, I mean, it starts off with, there sounds like there is some confusion about what we call these, and there was a, the question two relates to the intent about whether the Skokie property is included, and then, but the questions, the key questions here, eight, nine, and ten, eight is basically out of the IPI instructions, and the essence of all these questions all relate to the jury form. I mean, they're part of the jury form. Did the trial judge indicate that those questions would not bind in the event that the general verdict was issued? No. I don't think there's any agreement that those questions can be treated as. . . Not an agreement. What did the trial judge state in the conference on jury instructions as it related to the four questions? What was the court's position with respect to how these questions would be considered? Well, when you go back and look at the entire back and forth, the real nub of it, the confusion, if you will, was on question two. It was like, how do you treat question two? There's never any comment from the trial judge that all the other questions, which are in the verdict form right there, could be treated as something like a helpful hint or just part of a worksheet that the general verdict would somehow eliminate those or they could be disregarded. I mean, those are all part of the jury's findings. Those have to be taken as they're stated and as they were answered. So in this case, when the trial judge is talking about this is in essence a special interrogatory, you really have to read it in the context of question two. And the rest of the questions, they're right there. There was no disagreement by JLL that these are confusing or they shouldn't be. They're right there in the verdict form, eight, nine, and ten. And they were answered unambiguously. And when you get to that point. But who says they're controlling? Why should they be controlling? Because this is a case where it's not just a general verdict. These are questions that were agreed to before trial. And no party said that in the event of a general verdict, these all get washed out or they can all be disregarded. I mean, that was ‑‑ There was conversation back and forth among the lawyers and with the judge about what the effect of the answers that the jury might get to these questions could be. And your trial lawyer specifically said they are not special interrogatories. But it seems like you're trying to use some circumlocution here to suggest that they are and that they're binding and not just reflective of what could be called an inconsistent verdict. Well, I think the confusion was maybe in the pronoun it when the parties were talking. When you read the transcript, it's really what the ‑‑ the question was, number two, was number two part of the pattern of jury instructions? It's not. And should it be treated as a special interrogatory? And that was sort of the back and forth. And whether we characterize these as special interrogatories or part of the verdict form, the essence of what these questions are are questions to the ‑‑ Well, let's just assume even for the sake of argument that they're special interrogatories or that they simply can't be disregarded. At the conclusion of the trial, when the trial judge is reading the verdict, does the trial judge not hand to the parties the verdict forms which includes the questions? It does. And then does the trial judge invite from the parties motions? At that point, and the idea is that should this ‑‑ is this something that could have been cured before the jury was discharged? And I think the answer is no because ‑‑ But your trial lawyer hit the mute button, didn't say anything, didn't ask to call the jury, didn't ask to confer with the judge. You have a verdict form that has some inconsistencies and why should you be rewarded on appeal when your trial lawyer hits the mute button? Well, in this case, the ‑‑ once the jury made that determination in questions eight and ten that there was no evidence, then at that point, there was a matter of law. It could only determine and then award nominal damages. The jury, it's not up to the jury. The jury cannot override what is a verdict that is improper as a matter of law. That is a question for the trial court in a post trial motion. Are you suggesting that the trial judge would not have had any authority to re‑instruct the jury with respect to any inconsistencies? Yes. At this point, Your Honor, this is similar to say a punitive damages award of a very large amount. The jury comes back with something that looks like it just can't stand and the judge can't then at that point go back to the jury and say, you know, your award is too high, you have to lower it. It's the same principle here. What if the jury comes back and they award a lot of punitive damages and no compensatory damages, don't even fill out the verdict form, don't even sign it? What should happen in a situation like that? Well, that's a different situation. I understand. We send the jury back and tell them to complete the verdict form, right? If it's incomplete, yes, Your Honor. But in this case, they're not incomplete. They're complete, they're unambiguous, and they're unambiguous that there's no evidence of fair and reasonable damages. Under Illinois law, you can only award damages at that point, and anything above nominal damages is excessive. And that's the province, that's the role of the trial judge to correct that. The jury can't correct what is a verdict that is excessive as a matter of law. And I would commend the Court's attention to the Corpus case out of the Eighth Circuit that we cited in our brief. It's very similar to this case in that there you have a jury that finds no injury in a civil rights case. It's instructed that if it finds no injury, it can only award nominal damages. But the jury comes back with $75,000 in nominal damages. And the plaintiff then argued, well, this is inconsistent. If you can't, you know, this is inconsistent. And the Eighth Circuit said, no, that's not inconsistent. The jury answered the questions logically and consistently, just as they did here in 8, 9, and 10. And the Court came out and said, this was not something for the jury to correct. This was excessive as a matter of law. And as a result, the trial court had a duty to conform to what the law allowed. That's really our case, is that as you go through it all, you have some of this confusion about what do we call these special interrogatories or not, but we do know it's not just a general verdict. I mean, there's questions that go sequentially and they're logical and they're consistent. And so in the same way as in the Corpus case, the Court didn't say, well, we're going to try to hypothesize how the jury came up with the $75,000. There could be any number of reasons in the same way that the jury reached out for something. I mean, they picked a number they thought might be fair. Counsel, do you want to devote the remaining time in your argument to your fee-shifting argument? I think we are clear with respect to your position on the nominal damages issue. As to the fee-shifting argument, JLL's contract does not have any kind of fee-shifting provision that's recognized as shifting fees among what are called the parties of the first parties. And that's different from JLL Midwest's contract. They're different. And they drafted those contracts and there's no express fee-shifting provision in the JLL America's contract. How is this different from Watertower? Watertower is easily distinguishable because there was no fee-shifting provision. There in Watertower, they were arguing about indemnity for rent payments. And it had nothing to do, they were talking about indemnifying as to rent payments and attorney's fees. And the court held that if you're going to try to limit it to third parties, you have to say that expressly. But Watertower did not deal with fee-shifting in the sense that we have here. So because Watertower deals with rent and doesn't expressly deal with reasonable cost or cost, and in this case attorney's fees, you find it distinguishable. I think it's easily distinguishable because if you look at all the other cases we cite in the majority, they talk about fee-shifting clauses between the parties. Indemnity contracts, they have an indemnity that includes all fees, et cetera. But that's the usual situation when you're talking about third parties. The essence of what the majority rule says is that we have the American rule, everybody understands the American rule, and if you're going to deviate from the American rule, then you have to make that express in an indemnity contract, especially since indemnity contracts are strictly construed. So in this case, there's no question. The JLL Americas contract is different from the JLL Midwest contract. That has an express fee-shifting provision for prevailing parties. JLL Americas does not, and for that reason, the majority rule across the country says if you want to deviate from the American rule, you better make it explicit. And that was not done. And JLL Americas, it was their contract. So there's that reason. And then there's a second reason, too. It's just the language itself. It speaks about defending and holding harmless. You can't defend against yourself and you can't hold yourself harmless. So for a second reason, the language itself of the JLL Americas contract simply can't be read as an indemnity contract.     And that's the reason. And that's the reason. And that is one that contemplated fee-shifting among the parties, the first parties, as opposed to a third party. Thank you. Any additional comments before you close? Unless the Court has any further comments, I'd like to reserve the balance of my time for rebuttal. Thank you. Thank you. Mr. Tompkinson? Good morning, Your Honors. Lancetec, in its appeal, argues that the trial court is required as a matter of law to reduce the jury verdict to $1 because the jury found no compensatory damages. This argument fails for several reasons. And the first one is it was just plain-out waived in a trial court. As Your Honors were questioning counsel for Lancetec, this was not raised in the trial court before the jury left at a time when this confusion as to the jury verdict that they've said is there, we don't think it's there, could have been rectified easily by the trial court. And the court law is clear that if you can do that, if you don't, you waive it. But even more important than that, Your Honors, it wasn't waived at any time in the trial court, including the post-trial motion. In the post-trial motion, Lancetec argued that there should be a remitted jury in this case. And as I said, based on all of the evidence in the record, the court should use its discretion to reduce the damages to $1. That's very, very different than the argument they're making before this court, which is that there is a requirement as a matter of law, and there is no discretion that the trial court reduce the damages to $1. So there's two very different arguments, and the argument they're making here was never made in the trial court, either before the jury left or at any time before their appeal. So it's waived. With respect to the merits of this, I think as Your Honors also pointed out, Now, what we have here is a verdict for $205,485. It's a very specific sum of money. And we have a general verdict. No party asked for any special interrogatories. The court did not provide any special interrogatories. In fact, as Your Honor pointed out, the trial counsel at Lancetec said at the jury conference that there were not special interrogatories that they were proposing. There was no confusion as to that at all in the jury conference. And the court was very clear when it said, if these questions go back with the jury form, they will not be binding over the general verdict. So there's really no question. There was no limitation that was being discussed in there. Lancetec said these weren't special interrogatories. The court confirmed that before they were entered. So what we really have here is a general verdict with no special findings. And when you have a general verdict, you know, the questions were just IPI questions that go back with the jury verdict form. When you have a jury verdict, general verdict, there's no requirement that that verdict be perfect. There's no requirement that it exactly be strictly construed. In fact, it's supposed to be liberally construed and may be molded into form unless it is unclear where there's doubt as to its meaning. Here there is no doubt as to what the jury really intended to do here. And that number is important in that effect. Where does that 205,000-plus number come from? It comes from the testimony elicited by Lancetec's counsel from Lancetec's landlord and Lancetec's broker, in which they said that if there were two brokers involved in this case, the selling broker, Lancetec's broker, would get 50 cents per square foot times the square footage of the property times the term of the lease, which comes out to exactly $205,485. The landlord and the broker also testified that if there had only been one broker, and if CBR was the only broker, that was Lancetec's broker, they would get a full dollar, so twice that much. So clearly what the jury did here was they said, well, if there's one broker, the leasing broker gets a dollar. If there's two brokers, the leasing broker gets 50 cents. The other broker probably gets the other 50 cents. And that was perfectly logical for this jury, because the argument in this case was that Lancetec was not going to be responsible for this particular commission, but the landlord would be responsible for this commission. So the landlord, the testimony of the landlord as to whether the landlord would agree to pay is easily something the jury could have accepted in this case as the damages that JLL suffered. There's also other evidence in the record from JLL's expert and JLL's broker that the fees would be $1.25 per square foot, and the damage would be about $520,000, but the jury clearly didn't accept that. But still it shows that this damage figure is clearly within the range of damages which are in the evidence, which is all that needs to be shown. Now, this argument that this was a passing comment or that it was something that was not offered for evidence and it was not offered for loss is really irrelevant for this analysis because, as the Supreme Court said in 1932 in the Morris case, once evidence is in, it's in for all purposes and it's in for all parties. So once that evidence went in, whether it was put in for any reason, the jury could use that for its damaged calculation and it could use it to Lancetec's benefit, to our benefit, even if Lancetec is the one that put it in. And, Your Honors, I think as you've hinted at in your questions, even if these jury questions, these questions were findings, which they were not, the jury questions are very, well, actually, before I get to that, I just want to say that the general verdict, the court should exercise, well, I'm sorry, even if these were special findings, the verdict should be upheld because the court needs to find, exercise all reasonable assumptions in favor of a jury verdict and a jury verdict is not legally inconsistent unless it is absolutely irreconcilable and a jury verdict is not irreconcilable unless it's supported by no reasonable hypothesis. Here, Your Honor, if you look at the questions that were answered, this charge is clearly supported by a reasonable hypothesis, even in light of the questions. Because in question four, the jury was asked, did JLL Midwest prove or sustain damages resulting from Lancetec's breach? The answer was yes, which confirms that jury did find, in fact, that we had damages. Question eight, the jury was asked, did JLL Midwest, I'm sorry, did JLL Midwest present evidence from which you can determine the fair and reasonable value of damages? The answer to that question, no, and the reason for that is obvious because JLL Midwest did not present that evidence. They used Lancetec's evidence and that's what the question asked them. Did JLL present the evidence from which you could determine fair and reasonable value of damages? The answer was no because the evidence they accepted as a measure of fair and reasonable damages was the evidence from Lancetec's witnesses. Same goes for number 10 where they asked, did JLL Midwest prove or sustain damages but fail to present evidence for which you can determine fair and reasonable damages? Same reasoning applies to their answer to that question. Here it's important to also look at the jury instructions again. They say you should consider evidence without regard to which party produced it, which is in accordance with the Supreme Court's decision I talked about a minute ago. Jury instructions also said you should calculate damages by determining the value of contract benefits JLL Midwest did not receive because of Lancetec's breach. That's exactly what they did. They determined that they would have received $205,485 because that's what the landlord said they would have gotten or said they would have, the inferred landlord said they would have gotten had they been involved in this case. Now I'd like to move on to the attorney's fees arguments.  There were attorney's fees under two provisions in their exclusive agreement. One is the prevailing party provision and the other is the general indemnity provision. And this is separate or part of the general indemnity provision that Lancetec's counsel was just talking about a minute ago with respect to JLL Americas. So the JLL Midwest, there's actually two provisions, both of which the court found supported attorney's fees. And JLL, Lancetec didn't appeal the award of attorney's fees under the general indemnity provision. In fact, never even made any argument whatsoever about it until its reply. So again, that argument was waived. With respect to the prevailing party provisions, Lancetec's is just wrong about that they're not, that JLL Midwest and JLL Americas were not the prevailing parties even if the award is reduced to a dollar. A prevailing party prevails when a judgment is entered in his favor or he obtains an affirmative recovery, even if they don't win all their claims. In fact, in Mendez, the first district said that the plaintiff was the prevailing party even though they received no damages whatsoever because they were reinstated. The real issue here of the prevailing party is whether the party received anything of benefit from the judgment. And here, even if you said our damages were a dollar, we received a benefit of a directed verdict on a $7 million counterclaim and third-party complaint that was raised by Lancetec and vehemently argued throughout this case, through a summary judgment state, through a motion to eliminate that we filed to get those kicked out because of no evidence. And in fact, they had no evidence, presented no evidence, and those claims were thrown on a directed verdict. So we had a very substantial benefit on that side. It dwarfs the $205,000 we got. And these were the prevailing party regardless of what happens with that $205,000. With respect to the amount of fees, the argument that the amount of, that the attorneys' fees should be proportional to the amount of fees is also something that's been rejected by the Illinois Appellate Court, particularly the Mendez case again, where the plaintiff was awarded a substantial amount of fees even though they received no money damages at all. Again, it's a question of, did we receive anything of value? And as I said a minute ago, yes, we did. We received a $70 million judgment in our favor, basically, on the defensive side. Here, the court determined that our fees were reasonable. There was no dispute that the work we did was reasonable. There was no dispute that our rate was reasonable. There was no dispute that we did anything extra. The trial court awarded those fees. Those holdings have not been appealed, and they are still valid. In the Mendez court, the court said, the defendant shouldn't complain about the amount of fees when they're the ones that cause a lot from their aggressive defense of the case. Everybody's entitled to aggressive defense, but if you have an aggressive defense, you can't complain about the amount of fees that are awarded. Here, there's an aggressive defense. There's a lot of work on these counterclaims and third-party complaints. They changed a simple contract claim into a very complicated case. It required more expert testimony, more deputants, everything else. So the amount of fees should be awarded, should remain, even if this court keeps the fees, reduces the fees per dollar. Now, with respect to the General Audit America's indemnity claim that was argued here, I agree with Your Honor that the Water Tower case controls. You look at the intent of the parties. Here, clearly, the intent of the parties was to include first-party claims. In fact, the very first sentence of the indemnity in this case precludes some first-party claims. So clearly, the parties were intending there could be first-party claims, but they couldn't be if JLL breached the agreement or engaged in gross misconduct or negligence. But it didn't disclude any other first-party claims. In the Open Kitchen case, the court held that the indemnity provision on its face limited the indemnity to third-party claims, as opposed to the Water Tower case, where they said defense of third-party claims was in addition to the general duty to indemnify on all claims, including first-party claims. And that's what we have here in this case. So I do believe Water Tower controls. And that's the conclusion of the argument. Does Your Honor have any questions for me? Thank you, Mr. Taft. Thank you. Ms. Rebottle. First, as to the two waiver arguments, the arguments that we should have raised is before the jury was discharged. If the jury found no actual damages, as they did in questions 8 and 10, anything above that would have been error as a matter of law. And a verdict that is error as a matter of law must be corrected by the trial court in a post-trial motion. It's not for the trial court to tell the jury at that point, go back and reduce your damages. So if there was no waiver, what we did here was raise it properly in a post-trial motion. And as to whether it was preserved in the post-trial motion, I commend Your Honors to pages 4 through 7 of our post-trial motion. It couldn't be clearer. We spent an extensive amount of time discussing why this award, $205,000, could not be consistent with Illinois law and has to be reduced. And it was the duty of the trial court to reduce that. Whether the phrase as a matter of law was used, there's no special words. There's three full pages developing that whole issue. So that was not waived. Getting back to the whole idea of whether we can simply ignore the answers to questions 8 and 10, I haven't heard from JLL's counsel any case law in Illinois that says that the specific answers on a jury verdict form can be ignored or that they're somehow washed out if the general verdict is something different. That was never agreed to. Can the parties, though, agree to the manner or the effect of the questions? Can the parties agree to how they will be used or the effect of them? Is there anything in case law that says you can't agree with respect to the effect of the jury's answers to those questions? I've not seen any case law of that effect. And I do know here, except for the back and forth about question 2, those questions 8 and 10, they were intact. They were intact. And there's no case law that says those get to be treated as helpful hints or they can be ignored. Those were intact. So what I've heard is that there's this hypothetical, but the hypothetical doesn't carry JLL's burden. It had the burden of proof on damages. So there's no comment about the 205 that had nothing to do with its damages. And that's a separate contract from a third party, separate services. The jury could have also heard testimony about somebody's salary, for instance, and said, well, we think that's a good salary to get for damages. JLL had the burden of proof here. And when the jury found that they didn't carry that burden of proof by proving actual damages, those answers to question 8 and 10 simply cannot be ignored. Then quickly about the attorney's fees. If this court were to reverse the verdict and send it back for an award of nominal damages, then at that point on remand it's up to the trial court to determine whether JLL is still the prevailing party. That's not for this court on appeal. The issue of prevailing party is a question that's committed to the discretion of the trial judge. And if the judgment is remitted to a nominal amount, by definition that has to be determined by the trial court, not this court on appeal. So for all these reasons, we ask that the judgment based on the verdict to be reversed and remanded for entry of a nominal amount and that the trial court then redetermine any damages. Thank you. Thank you. Mr. Parkinson, when you cross appeal. For three minutes. Yes. More or less. Not that I'm counting. No. Very quickly, Your Honors. The trial court in this case reduced our fees by a 15 percent holdback amount that we agreed to with our clients partway through the case. And we think that that ignores some well-recognized pieces of law in Illinois, principally the Supreme Court's decision in Palm v. 2800 Lakeshore Drive, where the court held it doesn't matter what you've agreed to pay for fees if you're entitled to a reasonable fee. In that case, the client had agreed to pay $200, the court found a reasonable fee of $300, and they awarded $300. In addition to that, Your Honor, as I said, the fees here were reasonable. The $15, the 15 percent holdback was payable or is payable by GL Midwest upon the verdict in their favor and aware of attorney's fees. So it will be payable to them even if there was some reason to reduce it if it wasn't. That's all. Thank you. Thank you. Counsel. On the holdback issue, Your Honor, we start with the standard of review. The standard of review was abuse of discretion. Did the trial court abuse its discretion in finding that a 15 percent discount negotiated between two private parties, sophisticated parties, was reasonable? I think the answer has to be yes. It did not, those were, it was a reasonable determination that those were within the range of sophisticated parties negotiating their fees. Now the case law they cite, including the Palm case from the Supreme Court, these are cases that deal with statutes or ordinances where there is some public policy about wanting to provide access to courts, to provide incentives about different types of behavior, where courts make a special effort in those cases to, for instance, if a legal clinic is representing a client that they award a market rate for a legal clinic. We're not dealing with a legal clinic here. We're dealing with two parties that after the litigation had been going on for many months knew that this was going to be a substantial undertaking, that there was going to be a fair amount of additional work going on, and then negotiated what was in effect a volume discount. A volume discount is very common for cases like this. And what the trial judge did here is simply recognize that that volume discount is reasonable and that when it comes to the whole idea of should they get some kind of success, and it's basically a success fee, should they be entitled to a success fee? Well, success fees are really reserved for rare occasions, extraordinary events. There was no, this is not a rare or extraordinary event here. The jury didn't even award half of the amount they were seeking, and this does not qualify as one of those rare occasions when they're entitled to some kind of success fee, particularly when you have private parties negotiating between each other for, in effect, a 15% volume discount. The trial court was well within its discretion in finding that that was in the range of reasonableness and that part of its decision should be affirmed. Thank you, Mr. Moore. Any brief rebuttal? Yeah, very briefly. Thirty seconds. If there's a live mic, someone will walk up to it. That's not a live mic. I just want to say that none of the cases that were cited by us relied on any kind of special statutory policy in deciding that they would award more than was actually paid, and, in fact, the Young case said whether under a fee-shifting provision of the statute or in terms of a contract, the standards are the same. That's all I have to say. Thank you very much. Mr. Parkinson, we appreciate the eloquence with which you've argued. The briefs were well written. The matter is taken under advisement, and the decision will be issued in due course. Thank you very kindly.